Good morning, Your Honors. May it please the Court. My name is Gerald Roberts. I represent Herminio Acevedo, who is the petitioner. Mr. Acevedo is a Guatemalan national who entered the United States in April of 1990. Before proceeding on the issues of today, the Court has requested the parties to address the issue of prosecutorial discretion in its most recent order. On June 17, 2011, John Wharton, the Director of Immigration and Customs Enforcement, issued a memorandum regarding prosecutorial discretion in which it is directed that the agency, as well as the Department of Justice, review and prioritize cases. Included in that memorandum is the possibility that the Office of Chief Counsel at ICE would consider joining in motions to reopen for the parties. Now, this memorandum also provided there would be an interagency task force to make further guidelines. This hasn't happened yet, though I can tell you that. Well, there is a task force. It's meeting, but the guidelines have not been issued yet. Exactly, Your Honor. I can say that I know the local immigration courts are starting to deal with this. Local ISOCC has, in fact, started to accept requests for a prosecutorial discretion. In our case, the petitioner is a Guatemalan national. At the time that he had his interview at the Asylum Office in 2005, there was a ruling by the Asylum Office that he was not a member of the American Baptist Church's class and, therefore, not eligible for an ACARA because he had not By the way, in your motion to submit this case, you said something about you were going to look for more documentation on that ABC question. Yes, Your Honor. Anything? Well, yes, Your Honor. It actually came up after the final hearing on the merits on November 20, 2007. Subsequent to that hearing, this court in Chali Garcia, as well as a subsequent memorandum from ICE, said there's a substitute method for becoming a member of the ABC class of Guatemalans, and that method was to file an asylum application between December 19, 1990 and December 31, 1990. Prior to this ruling by this court, only an actual ABC filing would satisfy the requirement or, in the alternative, a filing of an asylum application by April 1 of 1990. Because of this ruling, I believe that the petitioner is eligible now for an ACARA because he filed for political asylum on February 8, 1991, falling within that one year period, as well as entering the United States before the April 1, 1990 requirement for ACARA. In light of this, I am in the process of preparing an ACARA application. I know how the local office here works, the Office of Chief Counsel. They would like to have a complete package, not simply a bare-bones request to join in a motion. In the past, the local OCC office has been reluctant to join in motions, and what I am hoping will happen is that in light of the Morton Memorandum, they would be more inclined to join. And as I can say, and these are only examples I've heard from colleagues that, in fact, there are some joint motions happening as well as motions to add and enclose cases. So what do you think we should do with this case right now? I would like the case to be referred to mediation so I would have the opportunity to go ahead and be able to submit my request, which should be done this week, Your Honors. All right. Let me just ask the opposing counsel a question for a moment. Do you have any objections to our referring it to mediation? I don't think I do. I think that the agency should have the opportunity to consider his request. You said in your order that you wished for government counsel to consider the Morton Memo and what possible relief that they might offer to Petitioner. I did make a phone call and send some e-mails to the San Francisco ICE office. At that time, they didn't have enough information to affirmatively state what they would do, but they will consider the request once he fills out the NACARA application and states what relief he's seeking. So placing it in mediation seems to make a lot of sense to me, Your Honor. Thank you. Even beyond the NACARA issue, this is a case that would seem to fall under the Morton Memo as a very low-priority case and one that might well be worked out. There's no criminal record he's been here. None that we're aware of, but that's one of the things that's taking time in this case is that they will need to order the record and then do an updated criminal background check. Okay. Fine. Well, thank you. Does anyone have any questions? No. I just might add this little bit of information. General Holder met with the judges in Seattle at his request last week, and we talked about the need to speed up this study group that's trying to develop rules, and he and one of his assistants who was accompanying him came up to me and stated that she would be the one which would implement this and that she was going to give it high priority. So I'm hopeful that we're going to have both for your sake and our sake and the litigants' sake that this does happen quickly. Well, I'm hopeful as well. I realize that this case has taken probably close to two decades at this point. I don't know if this is an appropriate forum in which to share this, but I have an additional concern. And I apologize myself, as a younger attorney in the office, that I didn't realize at the stage when I briefed the case that there was an outstanding NACARA issue. It wasn't raised in the briefs, and I wish it had been. I certainly would have reached out to address it at that time. This case, as you may be aware, was consolidated with the case of the petitioner's son. The son at the time was a juvenile. I believe he was 17 years old when he entered the United States, or perhaps, well, 14, I think. He was 17 at the time that he was before the immigration judge. Unfortunately, in this case, it appears he would have been a derivative under his father if his father's NACARA application had been adjudicated earlier. Since that hasn't happened yet, the son turned 21 in January of this year and is no longer eligible as a derivative under his father. The son still has proceedings pending.  I'm not sure if you intend to seek relief on behalf of the son, too, and what the agency would do with that, but I just wanted to alert the Court to that issue as well. Could I just ask a general question? You have an understanding under the Morton Memo how heavily, you know, past criminal history weighs? I know it's definitely a priority to remove people with criminal violations, especially aggravated felons. Anecdotally, perhaps it depends on the severity of the crime. I don't know where. So is it sort of almost categorical that a person who's an aggravated felon is ineligible for the, I'll call it Morton relief? They definitely wouldn't be at the top of your list, as I understand the Morton Memo, Your Honor. Thank you. You're welcome. If there are no further questions, I think we both agree that we should be given some time for the agency to consider the Petitioner's request. They may administratively close and let him pursue Nicarra. Let's see what happens. Thank you. Thank you very much, counsel. Thank you, Your Honor. Thank you very much. The case is argued will be referred to mediation.
judges: Fletcher, Reinhardt, Tashima